WEISHAAR, Appellee,

v.

STRIMBU et al., Appellants.

[Cite as *Weishaar v. Strimbu* (1991), 76 Ohio App.3d 276.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58786.

Decided Oct. 28, 1991.

*Randolph, Biddlestone, Tedrick & Jones* and *David W. Jones*, for appellee.
*Otto Galba*, for appellants.

HARPER, Judge.

Plaintiff-appellee, Frank L. Weishaar, Jr., instituted an action against defendants-appellants, George and Livia Strimbu, in the Rocky River Municipal Court on September 14, 1988. In his complaint, Weishaar alleged that the Strimbus failed to perform all the conditions of an oral lease agreement, failed to provide an agreed to written lease agreement, and took retaliatory action in violation of R.C. 5321.02, thereby causing him to vacate the leased premises and to incur expenses. Appellants appeal from the judgment entered against them by the trial court which awarded $2,727.10 on the complaint, $3,000 in attorney fees, $782 in litigation costs, plus court costs to appellee Weishaar.[1] A careful review of the record compels reversal.

---

1. The trial court rendered judgment in the amount of $54.29 in favor of appellants on their counterclaim. Appellants do not assign as error this ruling of the trial court.

## I

George and Livia Strimbu resided in Albuquerque, New Mexico, and owned rental property in Rocky River, Ohio. The Strimbus advertised this rental property, located at 19922 Eldora Avenue ("Eldora residence") in the Cleveland Plain Dealer in May 1988. The Strimbus' daughter, Adina ("Adina") Strimbu Pantea, received the phone calls which resulted from the advertisement. One of these phone calls was made by Frank L. Weishaar. Weishaar and Adina arranged to meet at the Eldora residence on Sunday, May 8, 1988. The Strimbus were not going to be present during this meeting.

On May 8, 1988, Weishaar arrived as scheduled, accompanied by a friend, Jan Powers. After two viewings of the Eldora residence, Weishaar communicated to Adina that he would like to lease the property, ideally for two years, and that he would require a stove. Although Adina informed Weishaar that her father would probably accept those terms, she maintained that the final agreement was to be made between Weishaar and appellant George. Weishaar, at Adina's direction, telephoned George in Albuquerque that very evening.

Weishaar thereafter gave two checks dated May 12, 1988 to Adina. One check, which was made out for the sum of $550, represented one month's rent as a security deposit. The second check, in the amount of $230.65, represented rent for the Eldora property for the period of May 19, Weishaar's move-in date, until the end of May.

Weishaar subsequently met with George on May 21, 1988. George provided him with thirty-eight blank deposit slips for George's local bank account. George also provided nineteen deposit slips which were individually post-dated from June 1988 to December 1989.[2] Weishaar deposited the sum of $1,100 into George's account by the use of the June and July deposit slips.

The Eldora residence was issued a Certificate of Occupancy in March 1986 with an expiration date of March 1988. The city of Rocky River's building inspector informed the Strimbus in May 1988 of the need for an inspection of the Eldora residence prior to the issuance of another certificate. George granted permission to inspect the house to the building inspector on May 23,

---

**2.** Weishaar's exhibits reveal a total of fifty-seven deposit slips received from George. Exhibits E, F, and G consisted of seventeen signed slips. Exhibit H consisted of thirty-eight blank deposit slips. Two deposit slips were used by Weishaar and were not part of the exhibits.

The testimony indicates otherwise. According to the testimony, George provided Weishaar with a total of thirty-eight deposit slips. Nineteen of these deposit slips were signed by George, and nineteen were blank.

1988.  Weishaar subsequently contacted the building inspector in early June 1988 to report unsafe electrical wiring in the Eldora residence.

Robert Heine, the building inspector, forwarded a list of violations to the Strimbus after an inspection of the property on June 7, 1988.  A reinspection of the Eldora residence on September 1, 1988 revealed several remaining violations.  A Certificate of Occupancy was ultimately issued for the property on September 26, 1988.

The only written instrument executed by the Strimbus was an "Indenture of Lease" which was received by Weishaar towards the end of June 1988.  The lease was for a term of six months, commencing on July 1, 1988.  Weishaar's monthly rental payment was $550.  However, commencing on January 1, 1989, if Weishaar chose to renew the lease, the monthly rental would be increased to $600.  George explained that the change in rental was due to expected increases in maintenance costs.

Rather than accept the lease as written, Weishaar contacted his attorney and informed him that the lease was not in conformance with the oral agreement between himself and George.  On July 28, 1988, Weishaar notified George that he would vacate the premises on September 3, 1988.

## II

Appellants, in five of their assignments of error, challenge the following conclusions of law made by the trial court:

"1.  There was a meeting of the minds between George Strimbu and Frank Weishaar, Jr. as to the 24–month duration of the lease term and as to the provision of a stove by the Strimbu.

"2.  Plaintiff relied upon the promises made by George Strimbu, on behalf of himself and his wife Livia, and in consideration thereof paid defendants Strimbu $780.65, in return for wich [sic] he took possession of the Eldora premises and believed he would receive a written lease for a term, $550.00 monthly, if not less than twenty-four months, June 1988, through May, 1990.  When Weishaar occupied the Eldora premises, the lease plaintiff counted upon was regarded as performed, by him.

"3.  The defendants contracted to give a 24–month lease, as originally intended to plaintiff, and they were bound to prepare and execute it as a matter of law.  Contrary to the original agreement of the parties, the defendants Strimbu differed substantially from what was originally agreed upon.

"   *   *   *

"6. The defendants Strimbu retaliated against the plaintiff because he complained to the City of Rocky River Building Department. Such retaliation is evidenced by the defendant Strimbu's execution and tendering to plaintiff of a lease (Plaintiff Ex 'J') that differed substantially in term and price from that which the parties originally agreed upon and the plaintiff originally relied.

"7. Although plaintiff was not forcibly deprived of the rental ldora [*sic*] premises, he had the right to elect ot [*sic*] terminate the rental agreement upon the retaliatory actions of the defendants Strimbu, pursuant to O.R.C. 5321.02(A) (!) [*sic*] and (B)(3)  A preponderance of the evidence indicated the defendants Strimbu interfered with plaintiff's possession and enjoyment of the property after plaintiff Weishaar contacted the Rocky River Building Department to complain regarding code violations.  The plaintiff's election to terminate his rental of the Eldora premises was a direct result of the defendants Strimbu reneging on the parties' original agreement.

"8. Plaintiff is entitled to recover his actual damages together with reasonable attorneys' fees as the Strimbus violated O.R.C. 5321.02(A)(1)."

Thus, appellants assert in assignments of error one, three, four, five, and six that:

"I.  The court erred in its finding that there was a meeting of the mind[s] of plaintiff and defendant[s] as to a 24–months lease, because the plaintiff did not meet the burden of proof of his case and did not present any corroborating evidence as to the oral agreement."

"III.  The court erred in ruling that the plaintiff by paying the prorated rent for May 1988 and paying the security deposit and taking possession of the premises performed his part of the contract.

"IV.  It was an error by the court to hold that defendant[s] retaliated against the plaintiff by submitting to plaintiff a lease proposal for one year.

"V.  The court erred in holding that the 'preponderance of the evidence indicated the defendants Strimbu interfered with plaintiff's possession and enjoyment of the property' when the transcript shows no evidence of any interference at all.

"VI.  It is an error to hold that O.R.C. 5321.02(A)(1) was violated by the defendant[s] when no evidence exists showing such violation."

■  It is elementary law that a party who asserts a claim has the burden of proving it. *McFadden v. Elmer L. Breuer Transp. Co.* (1952), 156 Ohio St. 430, 433, 46 O.O. 354, 356, 103 N.E.2d 385, 387.  Appellee Weishaar must establish his claim by the preponderance of the evidence, since the action is civil in nature.

Preponderance of the evidence means the greater weight of the evidence. *State v. Stumpf* (1987), 32 Ohio St.3d 95, 102, 512 N.E.2d 598, 606. Furthermore, McCormick, Evidence (3 Ed. Cleary Ed.1984) 957, Section 339, provides:

"The most acceptable meaning to be given to the expression, proof by a preponderance, seems to be proof which leads the [trier of fact] to find the existence of the contested fact is more probable than its nonexistence."

Accordingly, the burden is not met if appellee's evidence furnishes a basis for only a guess among different possibilities as to any essential element in the case. *Landon v. Lee Motors, Inc.* (1954), 161 Ohio St. 82, 53 O.O. 25, 118 N.E.2d 147, paragraph six of the syllabus.

## A

Appellants' first and third assignments of error challenge the trial court's conclusion that the parties orally agreed to a lease with Weishaar partially performing his part of the contract. As these assignments of error contain similar issues and facts, they will be addressed jointly.

Weishaar sought to prove that an oral agreement existed between the parties whereby he would lease the Eldora residence for a term of two years and the Strimbus would furnish a stove. Weishaar asserted that his possession of the premises and the payment of rent constituted partial performance of the oral agreement. He offered testimony and introduced into evidence the deposit slips, and the executed lease to support his claim.

The testimony revealed that Weishaar chose to rent the Strimbus' home because of its size, including an ample garage for vehicle storage. Weishaar ideally wanted an extended lease because of its accompanying stability. He asserts that he and George orally agreed to a twenty-four-month lease. He argues that he never would have accepted any other term of lease and that George's delivery of the deposit slips to him demonstrate this "meeting of the minds" as to the twenty-four-month period. The trial court accepted Weishaar's evidence as proof by a preponderance and found that the parties agreed to a twenty-four-month lease and that George agreed to provide a stove to Weishaar.

A lease must be in writing and signed by the party to be charged in order for a lease to be found or an action to be brought upon the lease agreement. R.C. 1335.04 and 1335.05. An oral agreement is generally unenforceable if there is no written lease or memorandum.

Based upon equity principles, a parol lease is, however, taken out of the statute by virtue of partial performance. See *Nase v. Donovan* (Mar. 8,

1984), Cuyahoga App. No. 47117, unreported, 1984 WL 4540. An agreement is only removed from the operation of the statute where the party relying on the agreement changes his position to his detriment and makes it impractical or impossible to return the parties to their original status. *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 31 O.O.2d 557, 209 N.E.2d 194, paragraph four of the syllabus. A party fails to establish "partial performance" through evidence of possession and payment of rent alone. *Id.* at 286, 31 O.O.2d at 559–560, 209 N.E.2d at 197.

A party who takes possession of the premises under an invalid lease, creates a tenancy at will. See Restatement of Law 2d, Property (1976) 82–83, Section 2.3 and Comment *a*. A tenancy at will converts to a periodic tenancy upon payment and acceptance of rent. *Id.; Suzzi, Inc. v. Atlantic Dept. Stores, Inc.* (1976), 49 Ohio App.2d 65, 70, 3 O.O.3d 125, 128, 359 N.E.2d 721, 726. Once a tenancy is determined to be periodic, it is necessary to establish the period of the tenancy. " 'Possession taken and rents paid under a defectively executed lease creates a tenancy from year to year, or month to month, *dependent upon the terms as to payment of rentals * * *.'* " (Emphasis *sic*.) *Manifold v. Schuster* (1990), 67 Ohio App.3d 251, 256, 586 N.E.2d 1142, 1145, quoting *Lithograph Building Co. v. Watt* (1917), 96 Ohio St. 74, 117 N.E. 25, paragraph six of the syllabus.

The duration of a lease is determinable by the provisions for payment of rent, so a lease providing for annual rent creates a tenancy from year to year. A month-to-month tenancy is created where a lease provides for monthly payments. See *Wineburgh v. Toledo Corp.* (1932), 125 Ohio St. 219, 222, 181 N.E. 20, 21; *Harleysville Mut. Ins. Co. v. West 106th Street Realty* (July 28, 1988), Cuyahoga App. No. 54178, unreported, 1988 WL 86958.

In the case *sub judice*, there was no written lease agreement for a period of two years. The trial court, in essence, determined that partial performance took the agreement out of the statute of frauds when Weishaar occupied the premises. As stated *supra*, a party's possession of the premises and payment of rent does not establish "partial performance." Weishaar's possession of the premises and his payment of rent, therefore, does not constitute partial performance as was found by the trial court. It was neither impractical nor impossible for the parties to return to their May 8, 1988 status once Weishaar informed the Strimbus of his intent to vacate the premises.

Since there was no valid lease, Weishaar's possession of the premises created a tenancy at will. As a result of the May 8, 1988 telephone conversation between Weishaar and George, Weishaar delivered two checks to George's daughter, Adina. One check, made out for $550, represented one

month's rent. Thus, a periodic tenancy was created when, after taking possession, Weishaar paid rent to the Strimbus. Weishaar thereafter received from George a number of deposit slips, to be used for monthly payments of rent. The fact of this monthly payment schedule was never disputed by either party. Absent any written lease agreement, the only conclusion to reach is that Weishaar's lease was a month-to-month lease. The total number of deposit slips, fifty-seven,[3] cannot be used to "guess" how many months were included in the oral lease.

Since there were possibilities other than the trial court's conclusion that there was a "meeting of the minds", Weishaar failed to prove by a preponderance of the evidence that he entered into a twenty-four-month lease with the Strimbus. Although the trial court did not err in finding the parties entered into a lease agreement, the court erred in its determination of the type of tenancy created by the agreement.

Appellants' first and third assignments of error are sustained.

### B

Appellants' fourth, fifth and sixth assignments of error deal with the trial court's conclusion that appellants violated R.C. 5321.02. They will, therefore, be addressed jointly.

The trial court proceeded to find that the appellants violated R.C. 5321.02 which provides, in pertinent part, that:

"(A) Subject to section 5321.03 of the Revised Code, a landlord may not retaliate against a tenant by increasing the tenant's rent, * * * because:

"(1) The tenant has complained to an appropriate governmental agency of a violation of a building, housing, health, or safety code that is applicable to the premises, and the violation materially affects health and safety;

"* * *

"(B) If a landlord acts in violation of division (A) of this section the tenant may:

"* * *

"(3) Terminate the rental agreement.

"In addition, the tenant may recover from the landlord any actual damages together with reasonable attorneys' fees."

---

**3.** As stated *supra* (see fn. 2), testimony reveals that Weishaar received a total of thirty-eight deposit slips.

Weishaar complained to the building inspector of the city of Rocky River about unsafe wiring in the Eldora residence. Thus, if the Strimbus retaliated against him as a result of the complaint, they would be in violation of R.C. 5321.02. The alleged "retaliatory action" was the execution of a lease which was for a six-month term to be renewed in January 1989 with a raise in monthly rent from $550 to $600. The trial court furthermore found that this action interfered with Weishaar's enjoyment of the property resulting in his justified termination of the lease.

The complaint by Weishaar to the inspector was made on June 1, 1988. The inspection occurred on June 7 with the notice of violations forwarded to the Strimbus soon after. The Indenture for Lease was executed by the Strimbus on June 27, 1988. There is, therefore, a temporal proximity of the parties' actions.

■ However, such a circumstance does not create a presumption of a retaliatory motive under Ohio law. *Howard v. Simon* (1984), 18 Ohio App.3d 14, 18, 18 OBR 38, 42, 480 N.E.2d 99, 104; *Karas v. Floyd* (1981), 2 Ohio App.3d 4, 6, 2 OBR 4, 6, 440 N.E.2d 563, 565. Although R.C. 5321.02(A)(1) provides that a landlord may not retaliate because of a complaint made to a government agency, the finder of fact must independently determine the reasons behind a landlord's action. A tenant must, therefore, show by a preponderance of the evidence, that the relationship between the complaint and action resulted from a retaliatory motive. See *Howard v. Simon, supra,* paragraph five of the syllabus.

■ The record herein fails to disclose a retaliatory motive in appellants' actions. Weishaar and the Strimbus discussed the terms of a future lease in May 1988. Although he impressed upon them his need for an extended lease, all that is apparent is Weishaar was under the "impression" that he would receive one. The Indenture for Lease, when ultimately executed and offered towards the end of June 1989, was not acceptable to him. The lease was for a term of six months to be renewed in January 1989. The lease also required a monthly rent of $550 but provided that the monthly rent would increase to $600 if Weishaar renewed the lease in January 1989. Since Weishaar had the option not to renew the lease, he was never obligated to pay an increased rent to the Strimbus.

Moreover, the Strimbus were already made aware of the necessity to have the Eldora residence inspected in May 1988. The March 1986 Certificate of Occupancy expired in March 1988, thereby requiring an inspection prior to the issuance of a new certificate. On May 23, George gave permission to the city building inspector to conduct the inspection. The June 1, 1988 telephone call

by Weishaar to the building inspector may have hastened the inspection, but the inspection would have taken place nevertheless.

The evidence offered by Weishaar failed to show by a preponderance of the evidence that the Indenture of Lease as executed by the Strimbus was a retaliatory action which interfered with his enjoyment of the property. Weishaar exercised his option, as a month-to-month tenant, to notify the Strimbus of his intent to vacate the premises when he did not accept the written lease. The trial court was in error in finding and concluding that the appellants violated R.C. 5321.02. Appellants' fourth, fifth, and sixth assignments of error are sustained.

## III

In their second assignment of error, appellants contend that:

"The court erred in disregarding the requirements of the statute of frauds concerning an oral contract for the lease or sale of real estate and also the requirement that a contract that is not to be performed within a year from the making thereof be in writing."

The appellants assert that the trial court erred in concluding that there was a twenty-four-month lease because such a document is required to be in writing.

If a defendant intends to rely on the affirmative defense of the Statute of Frauds at trial, he must plead it in his answer. Civ.R. 8(C); *Fox Radio Parts Co., Inc. v. Sales, Inc.* (Nov. 7, 1985), Cuyahoga App. No. 49706, unreported, 1985 WL 8406. Although the Strimbus herein vaguely assert the affirmative defense in their answer, it is not explicitly stated in it. They were thus barred from arguing it at trial and are barred from raising it on appeal.

Appellants' second assignment of error is without merit.

## IV

Appellants assert in their seventh assignment of error that:

"It was error by the court to deny two motions of dismissal by the defendants' counsel, one at the beginning of the trial and one at the conclusion of the plaintiff's case."

Appellants moved to dismiss appellee Weishaar's case pursuant to Civ.R. 12(B)(6) and 41(B)(2). The trial court denied both motions.

## A

■ A motion to dismiss made pursuant to Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted, "tests the sufficiency of the complaint and cannot be used to terminate litigation upon its merits." *Hunter v. Allright Parking Co. of Cleveland, Inc.* (Apr. 30, 1987), Cuyahoga App. No. 53078, unreported, 1987 WL 10608. The only issue for review is whether appellee's complaint included a statement of a claim showing that he was entitled to relief pursuant to Civ.R. 8(A). This court, therefore, held in *Kelley v. East Cleveland* (Oct. 28, 1982), Cuyahoga App. No. 44448, unreported, 1982 WL 5979, that:

" 'All that the civil rules require is a short, plain statement of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it is based.' "

■ In order for a trial court to dismiss a complaint for failing to state a claim upon which relief can be granted, it must appear beyond a reasonable doubt that the allegations in the complaint can prove no set of facts which, when construed most favorably to the plaintiff, would entitle him to relief. *Zuber v. Ohio Dept. of Insurance* (1986), 34 Ohio App.3d 42, 44, 516 N.E.2d 244, 245. A trial court should not dismiss the complaint based on doubt that the plaintiff will win on the merits. *Slife v. Kundtz Properties* (1974), 40 Ohio App.2d 179, 69 O.O.2d 178, 318 N.E.2d 557, paragraph four of the syllabus.

■ In his complaint, Weishaar alleged that he and the Strimbus agreed to enter into a twenty-four-month lease, said lease to be written at a future date. He also alleged that his reliance on this agreement prompted him to partially perform the conditions of the oral agreement. Prior to the written lease being presented to him, Weishaar complained to the city's building inspector as to suspected dangers in the Strimbus' rental home. A resulting inspection revealed building code violations of which the Strimbus were notified prior to the execution of any lease. The lease which was eventually executed was not, according to Weishaar, as agreed to by the parties.

Weishaar's complaint sufficiently alleged a claim for breach of an oral lease agreement and for retaliatory action by appellants. This allegation does not indicate the validity of his claim or of his ability to recover. The allegations indicate that Weishaar stated with specificity pursuant to Civ.R. 8(A) a claim against the Strimbus. The trial court properly denied appellants' Civ.R. 12(B)(6) motion to dismiss.

**B**

Under Civ.R. 41(B)(2), a trial court, upon motion by the defendant, will dismiss an action after the plaintiff's presentation of evidence where based "upon the facts and the law the plaintiff has shown no right to relief." The trial court, in ruling on the motion, must weigh the evidence to determine whether the plaintiff has proved his case by a preponderance of the evidence. *Altimari v. Campbell* (1978), 56 Ohio App.2d 253, 256, 10 O.O.3d 268, 270, 382 N.E.2d 1187, 1190. A reviewing court shall not reverse the trial court's evidentiary conclusions absent a showing that they are contrary to the manifest weight of the evidence. *Id.* A judgment which is supported by some competent, credible evidence shall not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

As was discussed *infra*, Weishaar failed to prove his entitlement to any relief by the preponderance of the evidence. The trial court's conclusions which are void of any argument are not supported by competent, credible evidence. The trial court, therefore, erred in not granting appellants' Civ.R. 41(B)(2) motion to dismiss.

Appellants' seventh assignment of error which relates to the Civ.R. 41(B)(2) motion to dismiss is sustained.

The judgment of the trial court which awarded $2,727.10 on the complaint, $3,000 in attorney fees, $782 in litigation costs, plus court costs to appellee Weishaar, is accordingly reversed.

*Judgment reversed.*

ANN MCMANAMON, P.J., and HARSHA, J., concur.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting by assignment.