[Cite as *Halter v. Dagostino*, 2022-Ohio-1069.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

JEREMY HALTER,                                  :

     Plaintiff-Appellant,                     :

                                 No. 110717

     v.                                                    :

DR. MICHAEL DAGOSTINO,                 :

     Defendant-Appellee.                     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  March 31, 2022

---

Civil Appeal from the Parma Municipal Court
Case No. 21CVI01351

---

*Appearances:*

Jeremy Halter, *pro se.*

Carlisle, McNellie, Rini, Kramer & Ulrich, Co., LPA, and
Bradley P. Toman, *for appellee.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant Jeremy Halter filed a small claims complaint against defendant-appellee Dr. Michael Dagostino in the Parma Municipal Court regarding the dental work he performed for Halter. The municipal court rendered

a judgment in favor of Dr. Dagostino after a trial. Upon review, we conclude that Halter failed to present evidence necessary to establish a dental malpractice claim, and therefore, we affirm the judgment of the Parma Municipal Court.

{¶ 2} The small claims complaint filed by Halter stated, in its entirety, that Halter "went to Dr. Dagostino to get crown work done and he botched the job. I asked him for a full refund so I can get the crowns redone somewhere else. He refused. I've been in pain and suffering ever since." Halter sought $6,000 in damages, the limit of damages for small claims complaints. Attached to his complaint was a bill of $5,500 ($925 for each of the six crowns) and a bill of $50 from Dr. Dagostino — which had been paid — and an estimated bill of $6,703 from another dentist, Dr. Brian Ash, for proposed treatment relating to the crowns. Also attached to the complaint is a treatment chart containing notes taken by Dr. Ash, which stated: "pt had crowns done at previous dds, roughly 2 months ago[;] pt is unhappy with appearance and bite[;] advised pt that bite and esthetics could be done better * * *."

{¶ 3} At the trial before a magistrate, both parties appeared pro se. Halter testified that, immediately after the crowns were glued in by Dr. Dagostino, he was disappointed with the result, but he was told by Dr. Dagostino to wait 30 days and return for an assessment. In the follow-up visit on August 12, 2020, Dr. Dagostino acknowledged that the crowns were "bad" and needed to be redone. Halter requested a refund but Dr. Dagostino refused.

{¶ 4} Halter testified that another dentist at Ash Family Dental would "fix the mistakes" made by Dr. Dagostino for an amount of $7,000 and he was waiting for the resolution of the dispute with Dr. Dagostino to undergo the treatment. Halter called a witness, an Uber driver who drove him on the day he had the dental work performed by Dr. Dagostino. She testified that Halter appeared to be unsatisfied with the work when he came out of the dentist's office.

{¶ 5} Halter submitted as exhibits a picture of his teeth and crowns, the bill from Dr. Dagostino, and the estimated bill from Dr. Ash. Although the notes taken by Dr. Ash were marked as exhibit No. 4, there was no testimony regarding these notes.

{¶ 6} Dr. Dagostino testified that when he first saw Halter, another dentist had performed the crown work a month before. At that time, two of the crowns were cracked and Halter also complained about the aesthetics of the crowns. Halter wanted his opinion as to what could be done to improve them. Over several visits, he provided Halter with a treatment plan and did the crown preparation work and also took impressions for the lab. On the scheduled day for the crowns to be glued in, Halter came in with his Uber driver and the driver advised Halter to change the shade of the crowns to a lighter color. As a result, Dr. Dagostino had to return the crowns to the lab for refabrication. On the next visit, the crowns were fitted and cemented, but Halter complained two of the teeth were shorter than the other four. According to Dr. Dagostino, for the average patient the "laterals" are always a millimeter shorter than the "centrals," the standard in the dental industry.

However, because Halter wanted the teeth to be of the same length, Dr. Dagostino agreed to "reprep" two of the six crowns and to take new impressions for the lab to fabricate the two crowns so that all six teeth will be of the same length. He scheduled a two-hour appointment for this work on August 12, 2020. Dr. Dagostino testified that Halter was a "no show" for that appointment.

{¶ 7} After the trial, the magistrate rendered a judgment in favor of Dr. Dagostino on the ground that Halter failed to provide expert testimony or a sworn affidavit regarding the standard of care in the dental profession or testimony demonstrating Dr. Dagostino's treatment of Halter fell below the standard of care.

{¶ 8} Halter filed objections to the magistrate's decision, alleging that Dr. Dagostino was untruthful about his failing to appear for the scheduled appointment on August 12, 2020. The trial court overruled the objections and adopted the magistrate's decision, finding that Halter failed to meet his burden of proof for his dental malpractice claim.

{¶ 9} On appeal, Halter, pro se, raises one assignment of error for our review, claiming that the "[t]rial court erred in granting summary judgment for defendant-appellee, Dr. Michael Dagostino." He frames the issue presented for review as "[w]hether the trial court abused its discretion by not accepting medical notes from Ash Family Dental giving their expert opinion on the condition and physical damage from work performed by Dr. Michael Dagostino."

{¶ 10} Halter argues that, while he was unable to provide an expert witness due to indigence, he provided notes from Ash Family Dental in place of testimony

by an expert witness. He also alleges that he did show up at the dentist's office on August 12, 2020, and asked for a refund, but Dr. Dagostino refused to refund his payment and offered to fix the problems instead. He argues the trial court erred in granting judgment in favor of Dr. Dagostino due to a lack of expert witness testimony because he provided the notes from another dentist that "clearly stated fault and malpractice."

{¶ 11} In a civil action, the party asserting a claim has the burden of proving his or her claim by the preponderance of evidence. *Weishaar v. Strimbu*, 76 Ohio App.3d 276, 282, 601 N.E.2d 587 (8th Dist.1991). "Preponderance of the evidence means the greater weight of the evidence." *Id.* at 283.

{¶ 12} While Halter's small claims complaint did not specify a cause of action against Dr. Dagostino, a claim against a professional is always governed by the law of malpractice. "Malpractice by any other name still constitutes malpractice." *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (10th Dist.1982). "[M]alpractice consists of 'the professional misconduct of members of the medical profession and attorneys.'" *Id.*, quoting *Richardson v. Doe*, 176 Ohio St. 370, 372, 199 N.E.2d 878 (1964). "It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice." *Id. See also Purushealth, L.L.C v. Day Ketterer, L.L.P.*, 2019-Ohio-2002, 136 N.E.3d 923, ¶ 39 (8th Dist.).

{¶ 13} To establish a claim for dental malpractice, the plaintiff "'must establish, by expert testimony, the requisite standard of skill and care of physicians

in the medical community, the negligent failure of the defendant to render treatment in conformity with the standard and the proximate causation of the plaintiff's damages by the defendant.'" *Condello v. Raiffe*, 8th Dist. Cuyahoga Nos. 83076 and 83556, 2004-Ohio-2554, ¶ 34-35, quoting *Steinmetz v. Francis J. Lowry, D.D.S. & Assoc. Inc.*, 17 Ohio App.3d 116, 477 N.E.2d 671 (1st Dist.1984), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976).

{¶ 14} Here, Halter presented no expert testimony at trial to establish the malpractice claim against Dr. Dagostino. We recognize that the rules of evidence are relaxed in small claims cases. *Stull v. Budget Interior*, 7th Dist. Belmont No. 02 BA 17, 2002-Ohio-5230, ¶11, and *Turner v. Sinha*, 65 Ohio App.3d 30, 34, 582 N.E.2d 1018 (12th Dist.1989). However, the notes from another dentist were not presented in the form of a sworn affidavit and, more importantly, did not establish the elements necessary for the dental malpractice claim; it did not provide the requisite standard of care or how the treatment rendered by Dr. Dagostino fell below the standard of care.

{¶ 15} Finally, Halter alleges that he is indigent and requests that an expert be appointed for him so that he can present expert testimony upon remand. Even if we assume Halter was indigent, civil litigants are not entitled to court-appointed experts to help them pursue their claims for damages. *Randolph v. McGookey*, Lucas C.P. No. G-4801-CI-0201304372-000, 2014 Ohio Misc. LEXIS 114, 7-8 (Apr. 9, 2014), citing *Lassiter v. Dept. of Social Serv. of Durham Cty.*, 452 U.S. 18,

25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1980), and *Black v. Miami Valley Hosp.*, 2d Dist. Montgomery No. 15167, 1995 Ohio App. LEXIS 4099 (Sept. 22, 1995).

{¶ 16} For the foregoing reasons, we affirm the judgment of the Parma Municipal Court.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
JAMES A. BROGRAN, J.,* CONCUR

*(Sitting by assignment: James A. Brogan, J., retired, of the Second District Court of Appeals.)